```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**TIMOTHY SHOUGH,**

        **Plaintiff,**

  vs.                              **Civil Action 2:14-cv-840**
                                       **Judge Sargus**
                                       **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is now before the Court on Plaintiff's *Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 10, and the Commissioner's *Memorandum in Opposition* ("*Commissioner's Response*"), Doc. No. 16. Plaintiff has not filed a reply.

Plaintiff Timothy Shough filed his applications for benefits on January 14, 2011, alleging that he has been disabled since September 9, 2010. *PAGEID* 58, 227-41. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on September 25, 2012, at which plaintiff, represented by counsel, appeared and testified, as

did John Finch, who testified as a vocational expert. *PAGEID* 75. In a decision dated January 11, 2013, the administrative law judge concluded that plaintiff was not disabled prior to August 20, 2012, but became disabled on that date and continued to be disabled through the date of the administrative decision. *PAGEID* 70. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 14, 2014. *PAGEID* 45-47.

Plaintiff was 49 years of age on the date of the administrative law judge's decision. *See PAGEID* 70, 227. He has a limited education, is able to communicate in English, and has past relevant work as a laborer and tire changer. *PAGEID* 68. Plaintiff was last insured for disability insurance purposes on December 31, 2014. *PAGEID* 60. He has not engaged in substantial gainful activity since September 9, 2010, his alleged date of onset of disability. *Id*.

## II. Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease of the cervical spine, status post cervical discectomy and fusion, degenerative disease of the acromioclavicular joint, and borderline intellectual functioning. *PAGEID* 61-62. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the following residual functional capacity ("RFC"):

> he is limited to lifting no more than 10 pounds; he can stand and/or walk for 30 minutes at one time or up to 4

2

> hours out of an 8 workday [sic]; he can sit for up to 2 hours at a time, for up to 6 hours out of an 8 hour workday; he is limited to only occasional overhead reaching with the dominant extremity as well as only occasional stair climbing, kneeling and crouching; because of a limited education he is limited to simple, routine tasks and tasks that do not require reading and writing as an essential function.

*PAGEID* 62-63.  The administrative law judge found that this RFC precludes the performance of plaintiff's past relevant work as a laborer and tire changer.  *PAGEID* 68.

The administrative law judge noted that plaintiff would turn 50 years of age on February 19, 2013, and found that, because of plaintiff's "decreased ability to read and write," plaintiff's age category is a borderline situation and the age category of closely approaching advanced age would not be applied mechanically.  *Id*.  The administrative law judge therefore found that plaintiff would "be considered to be an individual closely approaching advanced age as of August 20, 2012, six months prior to his 50th birthday."  *Id*.  The administrative law judge relied on the testimony of the vocational expert to find that, prior to August 20, 2012, plaintiff was able to perform a significant number of jobs in the national economy, including such representative jobs as bench inspector, assembler, and hand packer.  *PAGEID* 69.  The administrative law judge applied Medical-Vocational Rule 201.10 and found that, beginning on August 20, 2012, there are no jobs that exist in significant numbers in the national economy that plaintiff could perform.  *PAGEID* 70.  Accordingly, the administrative law judge concluded that plaintiff was

3

not disabled within the meaning of the Social Security Act prior to August 20, 2012, but that he became disabled on that date and continued to be disabled through the date of the administrative decision.  *Id*.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d

4

1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first challenges the administrative law judge's determination that plaintiff is not illiterate. *Statement of Errors*, pp. 7-12.

The Social Security regulations define illiteracy as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1); 416.964(b)(1). A person is considered illiterate if "the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." *Id*. The administrative law judge noted this standard, considered the evidence, and determined that plaintiff was not illiterate. The administrative law judge first considered plaintiff's testimony at the administrative hearing, but found that plaintiff's statements are "not entirely credible:"

> The claimant testified that he stopped school in the 8th grade. The Claimant reported that he was in special education classes. The claimant reported that he was 16 when he left school. The claimant also reported that he had been held back many times; he did not remember how many times.
>
> The claimant testified that he cannot read a newspaper. However, the claimant reported that if his wife leaves a note he could read this as he knows her handwriting, but he cannot leave his wife a simple note. He also reported that his wife completes any paper work and he signs it. The claimant also reported that it took him years to spell his wife's name correctly. As for reading, the claimant reported that he was trying to read his grandson's books such as *The Cat and the Hat*, but his grandson would laugh

5

>at him, so the clamant threw the book away. The claimant also reported that he did not remember filling out any paper work for the Social Security Administration. Educationally, the claimant reported that he was in special education and he was in special classes. As to the paperwork and the consultative evaluation report, the claimant testified that the consultative evaluator questioned him and he answered, but he did not fill out the paper work.
>
>The claimant reported possession of a valid driver's license and he reported that he still drives if he has to do so. The claimant reported that it took him three times to pass his temporary driver's test. The claimant also testified that he has trouble with street signs.
>
>As to whether he experienced problems reading with any of his jobs, the claimant testified that if someone wrote something out for him, he would copy it. The claimant also reported that he performed manual labor jobs. The claimant testified that when he was a pizza job delivery driver, he found houses by talking with his friends on a "CB" radio; his friends would tell him how to locate a house.
>
>.    .    .
>
>While the claimant's hearing testimony may not be [an] attempt to present in a more limited light than is supported, the undersigned finds that the claimant's reports as to his difficulty with literacy certainly may be an attempt to present himself in a more restricted light. The claimant testified that he stopped school in the 8th grade and he was in special education classes. The claimant reported that he was 16 when he left school. However, the evidence shows that the claimant completed the 8th grade of school with satisfactory grades up until the last two years (See Exhibit 10E). As is pertinent, these school records do not mention special education (Exhibit 10E). Indeed at Exhibit 7F, Dr. Write reported that the claimant completed his preliminary paperwork without a problem or incident and the claimant reported that he completed the 8th grade of school, with no enrollment in special education classes, and reported possession of a driver's license (Exhibit 7F/1, 4).

*PAGEID* 64-66. The administrative law judge then considered whether plaintiff meets the definition of "illiteracy":

6

> Although the claimant's representative argues that the claimant is illiterate (See Exhibit 12F), the undersigned notes that while the claimant has a limited ability to read and write, the evidence does not support a conclusion. . . that the claimant meets the definition of illiteracy as provided by the Regulations. Specifically, while the claimant has been diagnosed with borderline intellectual functioning, he has performed semi-skilled work activity. Moreover, 20 CFR 404.1564(b)(1) finds that "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." As discussed above, the evidence shows that the claimant completed the 8th grade of school with satisfactory grades up until the last two years (See Exhibit 10E); these school records do not mention special education (Exhibit 10E). At Exhibit 7F, Dr. White reported that the claimant completed his preliminary paperwork without a problem or incident (this despite the claimant's hearing testimony to the contrary) and the claimant reported that he completed the 8th grade of school, with no enrollment in special education classes; he reported possession of a driver's license (Exhibit 7F/1 and 4). Although the claimant did report that he "can't spell much at all" (Exhibit 3E/9), that his reading "reading level is about third grade" (Exhibit 3E/9); and at Exhibit 5E/7, he reported that as to following written instructions he "sometimes" cannot read well enough to understand them, and finally at Exhibit 11E/2 the claimant reported that he could read and write "somewhat" at the "1st grade level." At Exhibit 5E/8, he reported having glasses for reading things "I can understand." Given the report of Dr. White and the claimant's school records, as well as his work history, the undersigned finds that the claimant is not illiterate within the meaning of the Regulations.

*PAGEID* 67-68.

Plaintiff argues that the evidence relied on by the administrative law judge does not provide substantial support for the finding that plaintiff is not illiterate. Plaintiff specifically argues that the administrative law judge improperly relied on the

report of Alan White, Ph.D., on plaintiff's school records, and on plaintiff's work history to determine that plaintiff was not illiterate.  *Id*.  Plaintiff characterizes Dr. White's report as "less than reliable" because Dr. White's comment that plaintiff "completed his preliminary paperwork without a problem or incident" does not conflict with plaintiff's testimony that he did not physically fill out the paperwork.  *Id*. at pp. 11-12.  Plaintiff also argues that Dr. White's report regarding plaintiff's schooling conflicts with plaintiff's actual school records.  *Id*.  According to plaintiff, the administrative law judge misrepresented the school records when he stated that plaintiff "went to the 8th grade with satisfactory grades until the last two years."  *Id*. at p. 10.  Plaintiff further argues that the administrative law judge should not have relied on plaintiff's past relevant work in semi-skilled positions because the vocational expert testified that plaintiff's past work "could be performed without any reading and writing involved."  *Id*. at p. 11 (emphasis omitted).  Plaintiff's arguments are not well taken.

    First, the administrative law judge did not err in relying on Dr. White's report.  Plaintiff was consultatively psychologically evaluated by Dr. White on March 16, 2011, in order to assess plaintiff's intellectual functioning and mental status.  *PAGEID* 387.  Dr. White noted that plaintiff "completed his preliminary paperwork without a problem or incident," *id*., and that plaintiff "stated he completed the 8th grade of school with no enrollment in special

educational classes.  He reported no school issues with behavior, emotions, attendance, or tardiness." *PAGEID* 387-88.  The administrative law judge reasonably interpreted Dr. White's report, and even if, as plaintiff argues, Dr. White's report could also be read as meaning that plaintiff did not physically fill out the paperwork, the administrative law judge's interpretation of, and reliance on, Dr. White's report and findings was reasonable.  Moreover, plaintiff's arguments to the contrary notwithstanding, *see Statement of Errors*, pp. 11-12, Dr. White's report is not inconsistent with plaintiff's school records.

Plaintiff also argues that there is insufficient evidence in the record to support the administrative law judge's finding that plaintiff "went to the 8th grade with satisfactory grades until the last two years." *Statement of Errors*, p. 10.  According to plaintiff, the record contains report cards for only kindergarten and the school years 1978-1979 and 1979-1980.  *Id*.  Actually, however, the record contains plaintiff's report cards for every school year from 1968 through 1980.  *PAGEID* 309-10.  These records show that plaintiff received mostly satisfactory grades in the first through the sixth grades and mostly Bs (and two Cs) in seventh and eighth grades.  *PAGEID* 309.  Plaintiff's report cards from the years 1978-1979 and 1979-1980 reflect mostly failing grades.  *PAGEID* 310.  The record in this regard is entirely consistent with the administrative law judge's evaluation of the school records and plaintiff's statement to Dr.

9

White that he "completed the 8th grade of school." Moreover, even plaintiff concedes that the "report cards are silent as to whether Plaintiff studied in a special education classroom." *Statement of Errors*, p. 10.

Plaintiff also argues that the administrative law judge improperly relied on plaintiff's past relevant work in semi-skilled positions to find that plaintiff is not illiterate. *Id*. at p. 11. Plaintiff has past relevant work as a laborer and tire changer. *PAGEID* 96. The administrative law judge asked the vocational expert whether "either of these jobs [would] require reading or writing as an essential function of the job." *Id*. The vocational expert responded: "I don't believe so. We're talking the low end of semi-skilled [and] either position could be done without reading and writing." *Id*. The administrative law judge found that the vocational expert "testified that these two positions do not require much reading or writing." *PAGEID* 68. The parties disagree whether this finding misrepresented the vocational expert's testimony. Plaintiff cites to the vocational expert's testimony that either job could be done without reading and writing, *Statement of Errors*, p. 11; the Commissioner points out that the vocational expert was asked whether reading or writing was an essential element of either job, *Commissioner's Response*, pp. 5-6. The Commissioner also argues that plaintiff's extensive work history reasonably suggested basic literacy. *Id*. Either interpretation of the vocational expert's testimony is reasonable and the administrative

10

law judge's finding in this regard enjoys substantial support in the record.

In short, the administrative law judge's finding that plaintiff is not illiterate is supported by substantial evidence.  Even considering plaintiff's testimony, *PAGEID* 81-94, and accepting as true the contention that plaintiff received help in completing Social Security forms, *PAGEID* 265, 293, the record nevertheless contains substantial evidence to support the administrative law judge's finding that plaintiff is not illiterate.  The administrative law judge considered the proper standards, performed a thorough evaluation of the evidence, and determined that plaintiff is not illiterate.  Although plaintiff disagrees with the administrative law judge's evaluation of the evidence, this Court is not, under the circumstances, permitted to reweigh that evidence, even if the Court were inclined to reach a different conclusion. *See Kinsella v. Schweiker, supra*, 708 F.2d at 1059.

Plaintiff next argues that the administrative law judge failed to account for all of plaintiff's limitations in the RFC determination.  *Statement of Errors*, pp. 13-14.  Plaintiff specifically argues that the administrative law judge "adopted the opinion of State Agency expert David Dietz, Ph.D., that Plaintiff was moderately limited in the area of attention and concentration, persistence and pace," but failed to account for this limitation in plaintiff's RFC determination.  *Id*.  Citing *Ealy v. Comm'r of Soc.*

11

*Sec.*, 594 F.3d 504 (6th Cir. 2010), plaintiff argues that a limitation to "simple, repetitive tasks and instructions" does "not properly account for plaintiff's moderate limitations in concentration, persistence, or pace." *Id*.

In *Ealy*, the administrative law judge "relied on the vocational expert's testimony in response to a hypothetical question that stated, in relevant part, 'assume this person is limited to simple, repetitive tasks and instructions in non-public work settings.'" *Id*. at 517. The administrative law judge in *Ealy* had expressly found that the plaintiff could work for two-hour segments and that speed of performance could not be critical to his job, but failed to include that limitation in the hypothetical posed to the vocational expert. *Id*. at 516. The United States Court of Appeals for the Sixth Circuit held that the hypothetical posed to the vocational expert, upon whose testimony the administrative law judge relied, failed to adequately describe the claimant's moderate difficulties with regard to concentration, persistence or pace. *See id*.

The Commissioner in this case responds to plaintiff's argument that, "since *Ealy*, this district and others have reaffirmed that a limitation to simple, repetitive tasks — particularly with additional limitations that specifically address Plaintiff's unique mental impairments — may reasonably address a claimant's moderate impairment of concentration, persistence, and pace." *Commissioner's Response*, p. 6. The Commissioner further argues that no medical source in the

12

record opined that plaintiff's impairments resulted in restrictions on the pace of work that plaintiff could perform, and that the administrative law judge's RFC determination is supported by substantial evidence. *Id*. at pp. 6-7.

The administrative law judge found, at steps two and three of the sequential evaluation process, that plaintiff has moderate difficulties with regard to concentration, persistence, or pace. *PAGEID* 63. In making this finding, the administrative law judge noted plaintiff's testimony and Dr. Dietz's opinion, but did not credit either in finding that plaintiff has moderate difficulties with regard to concentration, persistence, or pace. Instead, the administrative law judge based his determination on plaintiff's "borderline intellectual functioning and Dr. White's report that the claimant cold [sic] not perform the serial 7 subtraction or the serial 3 subtraction task (Exhibit 7F/3)." *Id*.

The RFC determination is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). In formulating plaintiff's RFC, the administrative law judge considered the opinions of Dr. Dietz and the state agency physicians and assigned "some weight" to those opinions. *PAGEID* 67. Specifically, the administrative law judge adopted portions of the opinions addressing physical limitations, but did not expressly adopt any mental limitations contained in the opinions. *Id*.

13

The administrative law judge then considered Dr. White's assessment, plaintiff's borderline intellectual functioning and limited education, and found that plaintiff was to "simple, routine tasks and tasks that do not require reading and writing as an essential function." PAGEID 67.  Unlike the administrative law judge in *Ealy*, the administrative law judge in this case did not find a specific limitation in concentration, persistence, or pace, and no medical source has imposed any such restrictions on plaintiff's ability to engage in work-related activities.  *See Ealy*, 594 F.3d at 516 (finding that the administrative law judge's "streamlined hypothetical" to the vocational expert omitted specific limitations to "[two-hour] segments over an eight-hour day where speed was not critical.") (alteration in original).  *See also Hambrick v. Comm'r of Soc. Sec.*, No. 1:13-CV-374, 2014 WL 1961945, at *5 (S.D. Ohio May 15, 2014) (recommending remand where the administrative law judge assigned "great weight" to a medical opinion limiting the plaintiff to jobs with limited production quotas, but omitted the limitation in the hypothetical to the vocational expert) *report and recommendation adopted,* 2014 WL 2589317 (S.D. Ohio June 10, 2014).  This is not a case where the administrative law judge completely omitted from the RFC determination (or from the hypothetical posed to the vocational expert) a particular limitation.  Although the administrative law judge did not articulate plaintiff's limitations exactly as he had at steps two and three of the sequential process, he nevertheless considered all the relevant

14

evidence and explained the basis for his findings.  Under these circumstances, the Court concludes that the administrative law judge did not err in evaluating plaintiff's RFC.  *See Fry v. Comm'r of Soc. Sec.*, No. 1:13-CV-905, 2014 WL 3577439, at *9 (W.D. Mich. July 17, 2014) ("Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to 'simple work' is somehow legally deficient."); *Singleton v. Comm'r of Soc. Sec.*, No. 1:11-CV-1351, 2013 WL 967602, at *7 (W.D. Mich. Mar. 12, 2013) ("Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that an RFC determination must include specific limitations regarding concentration, persistence, or pace whenever the ALJ finds limitations in such areas."); *Grim v. Colvin*, No. 5:12-CV-2801, 2013 WL 5316346, at *7 (N.D. Ohio Sept. 23, 2013) ("The Court also agrees with prior decisions of this District that declined to find *Ealy* established a *per se* rule concerning the level of functional limitations that must be ascribed whenever a claimant is determined to have moderate limitations in his or her ability to maintain 'concentration, persistence, or pace.'"); *Clayton v. Astrue*, No. 1:12-CV-79, 2013 WL 427407, at *7 (S.D. Ohio Feb. 1, 2013); *Horsely v. Comm'r of Soc. Sec.*, No. 1:11-CV-703, 2013 WL 55637, at *8 (S.D. Ohio Jan. 3, 2013) ("[S]everal post-*Ealy* decisions declined to adopt a bright line rule that a limitation to 'simple repetitive tasks' in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and

15

pace.") *report and recommendation adopted* 2013 WL 980315 (S.D. Ohio Mar. 13, 2013)).

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                  *s/Norah McCann King*
                                                   Norah M<sup>c</sup>Cann King
February 18, 2015                 United States Magistrate Judge